IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA KIRALY

v. : Civil Action No. DKC 11-2845

BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action is a motion to dismiss filed by Defendant Board of Education of Prince George's County ("the Board"). (ECF No. 7).[1] The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I. Background**

Plaintiff Maria Kiraly commenced this action on October 4, 2011, by filing a complaint against the Board, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Prior to any response, she amended her complaint, adding as a defendant the

[1] The amended complaint incorrectly identifies this defendant as "Prince George's County Public Schools." The docket will be corrected to reflect its proper name.

American Federation of State, County, and Municipal Employees, Local 2250 ("Local 2250"), and further asserting claims for hostile work environment, retaliation, and intentional infliction of emotional distress. (ECF No. 3).[2]

According to the amended complaint, "Plaintiff is a seventy[-]one year old, Caucasian female, born in Hungary[,] who suffers [from] a disability," namely, Irritable Bowel Syndrome ("IBS"). (*Id*. at ¶ 5). She has been employed by the Board as a bus driver for more than twenty-eight years and is a member of Local 2250, "the collective bargaining agent that represents approximately 5,500 support employees who work for [the Board]." (*Id*. at ¶ 7). The complaint recites, in conclusory fashion, that one or both defendants are "trying to force older white employees out of their jobs." (*Id*. at ¶ 21).[3] As support for

---

[2] It is unclear how any of the causes of action set forth in the amended complaint apply to Local 2520. Moreover, it appears that this defendant has not been served. The amended complaint was filed on November 28, 2011. At the court's prompting, Plaintiff requested the issuance of a summons as to Local 2250 on March 9, 2012, and a summons was issued by the clerk on March 12. To date, Local 2250 has not responded and Plaintiff has not filed proof of service as to this defendant. Local Rule 103.8.1 provides, in part, that "[i]f a party demanding affirmative relief has not effected service of process within 120 days of filing the pleading seeking affirmative relief, the Court may enter an order asking the party to show cause why the claim should not be dismissed." Plaintiff will be directed to show cause, within fourteen days, why Local 2250 should not be dismissed.

[3] The complaint often recites that a specific act was performed by "Defendant." In most cases, however, not only is

this conclusion, she asserts that unidentified persons, at unspecified times, have made "comments . . . about her seniority and the need for her to retire" and called into question "her ability to drive the buses safely due to her age." (*Id*. at ¶ 9). On other occasions, Plaintiff has been "yelled at and given misinformation," allegedly for the purpose of "mak[ing] it appear that because of her age she [is] incompetent and not capable of doing her job or learning to use the newer equipment," despite the fact that she has "successfully completed training." (*Id*. at ¶ 20).

Plaintiff cites the assignment and management of bus routes as evidence of race and age discrimination. Apparently, a collective bargaining agreement sets forth a process by which the Board's bus drivers bid on preferred routes. Route assignments are based, at least in part, on seniority. Despite her long tenure with the Board, Plaintiff was "pulled off scheduled runs that she bid for and received and [] assigned to work on [buses] that were older and not safe." (*Id*. at ¶ 10). At some point, she was altogether "denied the ability to bid on runs . . . while younger people of a different race were given the more senior runs that Plaintiff was qualified to bid on and should have received." (*Id*. at ¶ 23). According to Plaintiff,

---

the individual actor not identified, but it is unclear which defendant is alleged to be responsible.

"[t]his affected [her] ability to earn income and benefits that she is entitled to receive under the collective bargaining agreement." (*Id*. at ¶ 24).

On two occasions, Plaintiff was "threatened . . . with termination." (*Id*. at ¶ 17). From November 2008 to February 2009, she was "placed on leave without pay and forced to use her annual and sick leave," apparently in relation to an incident in which she was "accused of attempting to run over another employee who actually ran in front of [her] bus while [she] was driving." (*Id*. at ¶ 14).[4] On April 6, 2011, she was "accused of threatening another driver and taken off her run and forced to work in a different location and in another capacity to maintain her employment." (*Id*. at ¶ 17). With regard to this second incident, Plaintiff alleges that "[t]he Defendant could not reasonably believe that the Plaintiff was capable of placing the accuser in danger or fear for his safety," and that the

[4] The amended complaint later recites that Plaintiff was "unfairly suspended because of false accusations made by her supervisor." (ECF No. 3 ¶ 46). Aside from a vague allegation that Plaintiff, at some point and for unknown reasons, "was not allowed to work for two and one half days" (*id*. at ¶ 12), the leave of absence from November 2008 to February 2009 appears to be the only event in the factual recitation of the complaint that could potentially qualify as a suspension. In setting forth the facts, however, Plaintiff does not refer to this event as a "suspension." Because there is no time frame provided, it is unclear what relationship this event has to others such that an inference of discrimination might arise. Moreover, it is uncertain whether this allegation is directed toward the Board or Local 2250, which allegedly refused to represent her in the grievance process.

accusation was merely “pretext for continued harassment and retaliation.” (*Id*. at ¶ 19).

According to Plaintiff, the cumulative effect of this “harassment” caused her to “have an attack” of IBS. (*Id*. at ¶ 30). When she informed the Board of her condition, she was “harassed and retaliated against . . . [and] subjected [] to psychological testing to determine her eligibility for continued employment.” (*Id*. at ¶ 26). After a subsequent “attack,” Plaintiff was accused of “pull[ing] a stunt,” “yelled at for changing her soiled garments,” and “told that she was old and that her health was in question.” (*Id*. at ¶ 31). Plaintiff was required to obtain medical clearance before returning to work. When she presented her employer with a doctor’s note declaring her fit, however, she was “told that she could not return[.]” (*Id*. at ¶ 33). While it is unclear whether Plaintiff did eventually return to her duties as a bus driver, there appears to be no dispute that her employment has not been terminated.

On February 3, 2012, the Board filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 7). Plaintiff opposed that motion on March 16 (ECF No. 13) and the Board filed reply papers on April 2 (ECF No. 16).

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of*

*Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff’s complaint need only satisfy the standard of Rule 8(a), which requires a “short and plain statement of the claim showing that the pleader is entitled to relief.” Fed.R.Civ.P. 8(a)(2). “Rule 8(a)(2) still requires a ‘showing,’ rather than a blanket assertion, of entitlement to relief.” *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than “a formulaic recitation of the elements of a cause of action” or “naked assertion[s] devoid of further factual enhancement.” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations. *Revene v. Charles Cnty. Comm’rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *Francis v. Giacomelli*, 588 F.3d 186,

193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

The Board contends that Plaintiff's amended complaint "is merely a jumble of accusations that fails to provide even general allegations about *who* took certain actions and *when* they supposedly took these actions." (ECF No. 7-1, at 4 (emphasis in original)). Absent such, it argues that it is "not on notice as to who might be creating respondeat superior liability," or when the conduct in question occurred, and therefore "cannot defend itself." (*Id.*). Thus, according to the Board, "Plaintiff's [c]omplaint is deficient and does not set out the requisite facts to show that her claims are plausible under the *Iqbal* and *Twombly* standards." (*Id.*). In opposing the motion, Plaintiff merely asserts that "the [c]omplaint gives fair notice of the nature and basis of the claim[s]," and suggests that "[i]f necessary, [she] is prepared to give details about each

supervisor named in the allegations in the complaint." (ECF No. 13 ¶ 7).

Significantly more detail than that set forth in the amended complaint is clearly necessary. Absent a narrative providing some description of the specific conduct at issue, when it occurred, and the identity of the relevant actors, Plaintiff cannot allege plausible claims for relief. *See, e.g., United Black Firefighters*, 604 F.2d at 847 (affirming dismissal where the plaintiff's "conclusory allegations of discrimination were not supported by any reference to particular acts, practices, or policies"); *Casey v. Litton Loan Servicing LP*, Civ. No. RDB-11-0787, 2012 WL 502886, at *6 (D.Md. Feb. 14, 2012) ("The fundamental deficiency in the Plaintiff's Amended Complaint is its complete failure to describe with any particularity actions (or inactions) undertaken by the *defendant*" (emphasis in original)); *Cureton v. Cianbro Corp.*, Civ. No. JFM-06-2303, 2006 WL 3537407, at *2 (D.Md. Nov. 22, 2006) (dismissing complaint that omitted, *inter alia*, "the dates of any alleged discrimination . . . and the individuals who either participated in or benefitted from the discrimination"). While it is true, as the Board argues, that the amended complaint does not satisfy the standard set forth by the Supreme Court in *Iqbal* and *Twombly*, a brief analysis of the specific claims Plaintiff purports to raise is instructive.

**A. Disparate Treatment**

The first and second counts of the amended complaint purport to raise disparate treatment claims under Title VII and the ADEA.[5] To plead a disparate treatment claim, the plaintiff must allege with sufficient particularity that (1) she is a member of a protected class, (2) her job performance was satisfactory, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated employees outside her protected class more favorably. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Perhaps the most fundamental element of a disparate treatment claim is identification of a cognizable adverse employment action. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required." (internal citation and footnote omitted)). An adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'"

---

[5] The first count, which is labeled "Discrimination under Title VII," recites, somewhat confusingly, that "Defendant intentionally discriminated against Plaintiff because of her Race, and Age (71) in violation of Title VII, ADA and ADEA[.]" (ECF No. 3 ¶ 42). There are separate counts, however, purporting to allege violations of the ADA and ADEA, as well as hostile work environment and retaliation under Title VII. Thus, essentially by process of elimination, the first count is construed as alleging disparate treatment based on race.

*Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (quoting *James*, 368 F.3d at 375). Where, as here, an employee is not discharged, such actions typically take the form of a decrease in compensation, demotion, or loss of an opportunity for promotion. *See James*, 368 F.3d at 376. It is uncertain, based on Plaintiff's amended complaint, whether any such circumstance has come to bear.

While the complaint alludes, at certain points, to "unfair suspensions" (ECF No. 3 ¶¶ 42, 46, 49), the factual allegations do not address such discipline or the timing and circumstances in which it may have arisen. At other points, the complaint references "attempt[s]" by unspecified persons to terminate Plaintiff's employment. (*Id*. at ¶¶ 15, 17, 19, 42, 45, 49). It appears, however, that Plaintiff is still employed by the Board and she has not identified the specific conduct that, in her mind, constituted an attempted termination. The complaint recites that, following the April 6, 2011, accusation that she threatened another employee, Plaintiff was "forced to work in a different location and in another capacity to maintain her employment." (*Id*. at ¶ 17). But the assignment of a "new role and responsibilities . . . in and of itself does not constitute adverse employment action" absent "a decrease in compensation, job title, level of responsibility, or opportunity for promotion." *James*, 368 F.3d at 376. Perhaps the best candidate

for a cognizable adverse employment action is Plaintiff's assertion that she "was denied the ability to bid on runs . . . while younger people of a different race were given the more senior runs that Plaintiff was qualified to bid on and should have received." (ECF No. 3 ¶ 23). According to Plaintiff, this affected her "ability to earn income and benefits that she is entitled to receive[.]" (*Id*. at ¶ 24). Absent any description of the circumstances in which this denial occurred, identification of the actors, or timing in reference to other events, however, an inference of discrimination does not arise. *See Francis*, 588 F.3d at 193 ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557); *see also Hale v. Con-Way Transp. Services, Inc.*, 428 F.Supp.2d 471, 475 (E.D.Va. 2006) ("The touchstone of an ADEA action is that the adverse employment decision would not have been made, but for plaintiff's age[;] [i]n other words, the plaintiff's age must have been a determining factor in the employer's decision.") (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000)).

Because it is unclear whether Plaintiff has suffered an adverse employment action, let alone when such event occurred, she has failed to state a plausible claim for relief.

Accordingly, her disparate treatment claims under Title VII and the ADEA will be dismissed.

**B. Hostile Work Environment**

In the fourth count of her amended complaint, Plaintiff raises a claim of hostile work environment under Title VII. To state a hostile work environment claim, Plaintiff must allege facts showing: "(1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *James v. Anne Arundel Cnty., Md.*, Civ. No. CCB-10-2267, 2011 WL 3666776, at *3 (D.Md. Aug. 19, 2011) (citing *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)). "Courts determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2005) (internal quotations omitted). "Pleading a hostile work environment requires both an objective and a subjective showing, specifically an environment that 'a reasonable person would find hostile or abusive, and one that the victim did in fact perceive

to be so.'" *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 669 (D.Md. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Plaintiff asserts in her complaint that "the misconduct detailed herein was unwelcome, but it persisted . . . [and] was intended to humiliate the Plaintiff and was pointed at the Plaintiff because of her race and/or national origin." (ECF No. 3 ¶ 51).[6] There are no facts, however, suggesting that any of the alleged "unwelcome conduct" was based on Plaintiff's race or national origin. Aside from reciting that Plaintiff is a "Caucasian female, born in Hungary" (*id*. at ¶ 5), and alleging, in conclusory fashion, that "younger people of a different race" were given preferential treatment (*id*. at ¶ 23), the complaint is devoid of any specific reference to Plaintiff's race or national origin. Moreover, Plaintiff has failed to allege objectionable conduct that was sufficient in degree and frequency to support liability under a hostile work environment theory. *See Reed*, 531 F.Supp.2d at 668 ("A hostile work environment is marked by 'extreme' conduct; 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (quoting *Faragher*, 524 U.S. at

[6] This is the only mention in the complaint of national origin discrimination.

788). Accordingly, her hostile work environment claim cannot be sustained.

**C. Retaliation**

Title VII also makes it unlawful for "an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made an unlawful practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Protected activity of an employee, therefore, can take the form of either opposing a practice prohibited under Title VII (pursuant to the opposition clause) or making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII (pursuant to the participation clause). To allege a retaliation claim, a plaintiff must state the following elements: (1) that she engaged in a protected activity, (2) that her employer acted adversely against her, and (3) that the protected activity was causally connected to the adverse action. *See Holland*, 487 F.3d at 218.

In the fifth count of her complaint, Plaintiff alleges that "Defendant retaliated against [her] for her discrimination complaints and EEOC filing in violation of [Title VII]." (ECF No. 3 ¶ 56). While the filing of complaints of discrimination

certainly would constitute protected activity under Title VII, Plaintiff provides no indication as to the substance of these complaints, when they occurred, or how they were related to an adverse employment action. Accordingly, she has failed to state a plausible claim for retaliation.

**D. ADA**

In the third count of her amended complaint, Plaintiff alleges that the Board "violated the ADA by . . . making false accusations about [her] health and mental state[;] [r]efusing to accommodate [her] disability even when she provided medical documentation to verify the condition[;] [p]lacing her on suspension and threatening to terminate her for insubordination when she was deliberately subjected to stressful situations that triggered her disability." (ECF No. 3 ¶ 49). Insofar as Plaintiff's employment has not been terminated and no facts are asserted that would support a disparate treatment claim under the ADA, it appears that she intends to raise a claim for disability discrimination based on a failure to accommodate. To plead a *prima facie* case of failure to accommodate, a plaintiff must set forth facts supporting that (1) she was an individual who had a disability within the meaning of the ADA, (2) the employer had notice of her disability, (3) with reasonable accommodations she should perform the essential functions of the position, and (4) the employer refused to make such

accommodations. *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n. 11 (4th Cir. 2001) (quoting *Mitchell v. Washingtonville Cent. School Dist.*, 190 F.3d 1, 6 (2nd Cir. 1999)).

Assuming that Plaintiff's IBS constitutes a disability within the meaning of the ADA and that she provided the Board with notice of her disability, her claim still must fail because she has done nothing more than assert that she requested and was denied a reasonable accommodation. Like much of the amended complaint, this is a conclusory statement unsupported by any facts, such as, for example, how her ability to work was limited by IBS, what accommodations were necessary and requested, and the circumstances in which a request was made and denied. *See Lamb v. Qualex, Inc.*, 33 Fed.Appx. 49, 59 (4th Cir. 2002) (The "burden of identifying an accommodation that would allow a qualified individual to perform the job rests with the plaintiff, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable"). Absent such detail, her disability discrimination claim cannot be sustained.

**E. Intentional Infliction of Emotional Distress**

The tort of intentional infliction of emotional distress ("IIED") was first recognized by the Court of Appeals of Maryland in *Harris v. Jones*, 281 Md. 560 (1977). To recover for such a claim under Maryland law, a plaintiff must show that: (1)

the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *Id*. at 566. "Each of these elements must be pled and proved with specificity. It is not enough for a plaintiff merely to allege that they exist; [s]he must set forth facts that, if true, would suffice to demonstrate that they exist." *Foor v. Juvenile Servs. Admin*., 78 Md.App. 151, 175 (1989). This tort is "rarely viable" and "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Respess v. Travelers Cas. & Sur. Co. of America*, 770 F.Supp.2d 751, 757 (D.Md. 2011) (quoting *Snyder v. Phelps*, 580 F.3d 206, 231 (4th Cir. 2009)).

The Board argues that Plaintiff cannot satisfy the second and fourth elements of an IIED claim. Specifically, it contends, Plaintiff has "failed to allege any extreme case of uncivilized behavior" or that she is "suffering disabling emotional distress." (ECF No. 7-1, at 5, 6). Plaintiff's opposition papers do not specifically address the Board's argument in this regard.

To satisfy the second element, the conduct in question must "completely violate human dignity," and "strike to the very core of one's being, threatening to shatter the frame upon which

one's emotional fabric is hung." *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.*, 566 F.Supp.2d 460, 466 (D.Md. 2008) (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 59-60 (1986)); *see also Kohler v. Shenasky*, 914 F.Supp. 1206, 1212 (D.Md. 1995) ("For conduct to be 'extreme and outrageous,' it must go beyond all possible bounds of decency, and . . . be regarded as atrocious, and utterly intolerable in a civilized community." (internal marks omitted)). "[T]he mere fact that the actor knows that the other will regard the conduct as insulting, or will have [her] feelings hurt, is not enough." *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 672 (1992).

In her amended complaint, Plaintiff has failed to identify the conduct she alleges was "extreme and outrageous"; rather, she merely asserts that "Defendant's conduct in harassing the Plaintiff and deceit and dishonesty was intentional and reckless, extreme and outrageous, and there was a causal connection between Defendant's misconduct and Plaintiff's emotional distress." (ECF No. 3 ¶ 57). Setting aside that it is unknown which "Defendant" this cause of action refers to and that no individual actors are identified – which itself constitutes sufficient grounds for dismissal, *see Asafo-Adjei v. First Sav. Mortg. Corp.*, No. RWT 09cv2184, 2010 WL 730365, at *5 (D.Md. Feb. 25, 2010) (dismissing where "Plaintiff fails to

identify which Defendants caused his emotional distress or describe with particularity the emotional distress that he allegedly suffered") – this is precisely the kind of "unadorned conclusory allegation[]" that courts have found insufficient to state a claim for relief. *Francis*, 588 F.3d at 193.

At base, Plaintiff asserts that she has been unfairly criticized, intentionally misled, and falsely accused of wrongdoing in attempt either to create a pretextual cause for her termination or to force her resignation. Insofar as this conduct was motivated by discriminatory animus, other causes of action may provide relief. The facts do not, however, come close to alleging "extreme and outrageous" conduct supporting a claim for intentional infliction of emotional distress. *See Figueiredo-Torres v. Nickel*, 321 Md. 642, 655 (1991) ("mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient to support a claim for intentional infliction of emotional distress" (internal marks omitted)); *Rollins v. Verizon Md., Inc.*, Civ. No. RDB 09-2379, 2010 WL 4449361, at *8 (D.Md. Nov. 5, 2010) (although yelling at the plaintiff in front of co-workers "may have embarrassed or upset [her], it does not constitute conduct that goes 'beyond all possible bounds of decency'"); *Arbabi v. Fred Meyers, Inc.*, 205 F.Supp.2d 462, 466 (D.Md. 2002) ("workplace harassment . . . almost never rises to the level of outrageousness, and almost

never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law.”). Accordingly, this claim will be dismissed.[7]

**IV. Leave to Amend**

In the concluding paragraph of her opposition papers, Plaintiff asks that she be permitted to amend her complaint “[i]f for some reason the [c]ourt should determine that [she] fails to state a claim[.]” (ECF No. 13, at 3). As the Board has not opposed this request, Plaintiff will be permitted to file a second amended complaint within twenty-one days. *See* Fed.R.Civ.P. 15(a)(2).

**V. Conclusion**

For the foregoing reasons, the Board’s motion to dismiss will be granted without prejudice to Plaintiff’s right to file a second amended complaint within twenty-one days. Within fourteen days, Plaintiff must show cause why Local 2250 should not be dismissed. A separate order will follow.

________/s/_________________
DEBORAH K. CHASANOW
United States District Judge

[7] Because the amended complaint does not adequately plead the second element of the tort, the sufficiency of the allegations with respect to the fourth element need not be examined.