IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARIA KIRALY          :

   v.                 :   Civil Action No. DKC 11-2845

BOARD OF EDUCATION OF PRINCE
GEORGE'S COUNTY, et al.   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action are motions to dismiss filed by Defendants American Federation of State, County, and Municipal Employees, Local 2250 ("the Union"), and Board of Education of Prince George's County ("the Board"). (ECF Nos. 29, 30). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, both motions will be granted.[1]

**I.   Background**

Plaintiff Maria Kiraly – a Caucasian, seventy-one-year-old school bus driver who suffers from Irritable Bowel Syndrome ("IBS") – commenced this action on October 4, 2011, against the Board, her employer, alleging disparate treatment based on race in violation of Title VII of the Civil Rights Act of 1964, as

---

[1] Also pending is Plaintiff's unopposed motion for extension of time to file her opposition papers. (ECF No. 31). That motion will also be granted.

amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"); disparate treatment based on age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"); and failure to accommodate her disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq*. ("ADA"). Prior to any response, Plaintiff amended the complaint, adding the Union as a defendant and asserting additional claims for hostile work environment and retaliation under Title VII and intentional infliction of emotional distress.

The Board moved to dismiss, characterizing the amended complaint as "merely a jumble of accusations that fails to provide even general allegations about *who* took certain actions and *when* they supposedly took these actions." (ECF No. 7-1, at 4 (emphasis in original)). The court essentially agreed, finding that

> [s]ignificantly more detail than that set forth in the amended complaint is clearly necessary. Absent a narrative providing some description of the specific conduct at issue, when it occurred, and the identity of the relevant actors, Plaintiff cannot allege plausible claims for relief.

(ECF No. 17, at 8). Further noting that none of the causes of action applied to the Union – which, in any event, had apparently not been served – the court dismissed the amended complaint, without prejudice to Plaintiff's right to file a

second amended complaint within twenty-one days, and directed Plaintiff to show cause why the Union should not be dismissed.

Approximately three weeks later, Plaintiff filed a waiver of service signed by counsel for the Union (ECF No. 20) and a second amended complaint purporting to raise the same claims she attempted to raise in the prior pleading (ECF No. 22). In response, the Board and the Union filed the pending motions to dismiss. (ECF Nos. 29, 30).[2] Plaintiff filed papers in opposition (ECF Nos. 32, 33) and Defendants filed replies (ECF Nos. 34, 35).

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A

---

[2] The Union moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Much of its motion is based on the premise that Plaintiff's claims against it may only be construed as alleging breach of a duty of fair representation, rather than discrimination based on race, age, and disability. Thus, the Union contends, the complaint does not present a federal question and, because the parties are not diverse, the court lacks subject matter jurisdiction. The court rejected a similar premise, advanced by the same counsel, in *Murphy v. Adams*, Civ. No. DKC 12-1975, 2013 WL 398753, at *3 (D.Md. Jan. 31, 2013), and will do the same here. While the Rule 12(b)(6) aspect of the Union's motion focuses primarily on an erroneous limitations argument, it generally alleges that the complaint does not pass muster under *Iqbal* and *Twombly*.

The Board's motion is labeled as a motion to dismiss or, in the alternative, for summary judgment. In substance, however, it seeks only dismissal pursuant to Fed.R.Civ.P. 12(b)(6).

3

plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the

4

well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

**III. Analysis**

Plaintiff's second amended complaint, unfortunately, is not an improvement on the prior versions, as it is laden with conflicting allegations that undermine any attempt to discern a coherent factual narrative. Moreover, the complaint fails to identify what alleged acts correspond to specific claims, opting instead to present a series of facts with the hope that one or more causes of action might be pieced together therefrom. Due to the conflicting nature of the allegations, however, this simply is not possible.

Plaintiff alleges, for example, that, after she was diagnosed with IBS, she took extended medical leave from work beginning on or about October 15, 2007. She initially asserts that she returned on February 6, 2008. (ECF No. 22 ¶ 10). Two paragraphs later, the complaint recites that she "returned to work as instructed" on November 5, 2008 – *i.e.*, approximately

5

nine months after February 6 – at which point she was told "to go home" by the forewoman of her bus lot, Ms. Swann. (*Id*. at ¶ 12). According to Plaintiff, she "was not given a reason why she was being sent home" and "she lost sick time, retirement [benefits,] and her pay was reduced" as a result. (*Id*.). She further alleges, however, that she "was suspended in November 2008" after she was "accused [by Ms. Swann] of attempting to run over another employee" with a bus. (*Id*. at ¶ 57). In yet another incident occurring in November 2008, Plaintiff complains that she was sent home for medical reasons following an incident in which she "soiled [her] undergarments" while at work. (*Id*. at ¶¶ 13-15). At another point in the complaint, she states that she was "placed on leave without pay . . . from November 2008 to February 2009" (*id*. at ¶ 26), but then cites several incidents that allegedly occurred at work during the same time period (*id*. at ¶¶ 19, 33, 40). Following one of those incidents, in January 2009, Plaintiff allegedly "became very ill" and "was forced to take a year of leave with pay and to use her medical benefits" (*id*. at ¶ 69), but she cites numerous incidents occurring at work during the time she was on leave (*id*. at ¶¶ 25, 32, 34, 38, 40, 55, 56, 67, 76, 87, 88). She alleges that she was again placed on leave in March 2009, and "was informed that she would be terminated because there was no record of [her] requesting leave or that she provided any

6

medical documentation." (*Id*. at ¶ 32). During the same month, however, she asserts that she was "transferred to another location" where she "made less money . . . because she could not drive overtime." (*Id*. at ¶ 56). On January 4, 2011, Plaintiff was threatened with termination for "attempting to run over another employee." (*Id*. at ¶¶ 23, 24). Although she was "informed by letter dated March 14, 2011," that the decision to terminate her employment had been "upheld" after further review, she was apparently still working on April 6, 2011, when she was "threatened again with termination" following an incident in which she was "accused of threatening another driver and taken off her run and forced to work in a different location and in another capacity to maintain her employment." (*Id*. at ¶¶ 24, 27).

Due to inconsistencies such as these, it is virtually impossible to piece together a clear account of the relevant facts. As noted, in analyzing a motion to dismiss, the court must accept as true the "well-pleaded allegations" contained in the complaint. *See Mylan Labs.*, 7 F.3d at 1134. The vast majority of the allegations contained in Plaintiff's second amended complaint are decidedly not "well-pleaded" and cannot be credited for purposes of the instant motions. What remains, moreover, are essentially conclusory allegations that isolated incidents, neutral on their face, were in fact motivated by

7

discriminatory animus.  Such allegations are insufficient to state plausible claims for relief.  *See Iqbal*, 556 U.S. at 679.  Accordingly, the complaint is subject to dismissal.

Plaintiff requests, in the event that the dismissal motions are granted, that she be permitted "a last opportunity to amend."  (ECF No. 33, at 17).  Pursuant to Fed.R.Civ.P. 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires."  The Supreme Court has held that:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

The court declines to grant leave for Plaintiff to file a third amended complaint.  As the Board observes, in permitting Plaintiff leave to file her second amended complaint, the court provided a detailed account of the pleading requirements for the claims she attempted to raise.  Plaintiff's counsel failed to take advantage of that opportunity, however, and there is no reason to believe that a different result would obtain upon the filing of a third amended complaint.

**IV. Conclusion**

For the foregoing reasons, the motions to dismiss filed by the Board and the Union will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge